UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA, and
THE STATE OF FLORIDA, ex rel.
ERNEST SHARPE,

    Plaintiffs,

v.                                         Case No. 8:13-cv-1171-T-33AEP

AMERICARE AMBULANCE,

    Defendant.
_____/

## ORDER

This matter comes before the Court upon consideration of Defendant Americare Ambulance's Motion to Dismiss, filed on May 26, 2017 (Doc. # 55), and Relator Ernest Sharpe's Response, filed on June 23, 2017 (Doc. # 61). For the reasons that follow, the Motion to Dismiss is **GRANTED IN PART** as to Counts I through III, with leave to amend, and **DENIED IN PART** as to Count IV. The Court defers ruling on the United States' Motion to Intervene, filed on June 30, 2017 (Doc. ## 62, 63), until Americare either files a response or fails to file a timely response.

I.   **Background**

Defendant Americare Ambulance provides ambulance services to Medicare and Medicaid patients in Hillsborough County and Polk County. (Doc. # 1 at ¶ 1). Relator Ernest Sharpe, who worked for Americare as a paramedic for five months, alleges

that Americare violated the federal False Claims Act and the Florida False Claims Act by billing the government for medically-unnecessary ambulance services. (<u>Id.</u> at ¶¶ 6, 80-90). Sharpe also alleges that he was fired after reporting Americare's fraud. (<u>Id.</u> at ¶¶ 91-97). The relevant facts follow.

Medicare covers non-emergency ambulance service if, among other requirements, a Medicare beneficiary is "bed-confined," which means:

> (i) The beneficiary is unable to get up from bed without assistance.
> (ii) The beneficiary is unable to ambulate.
> (iii) The beneficiary is unable to sit in a chair or wheelchair.

(<u>Id.</u> at ¶ 39) (citing 42 C.F.R. § 410.40(d)(1)). Non-emergency ambulance service is also covered if the service is scheduled, repetitive, and:

> if the ambulance provider or supplier, before furnishing the service to the beneficiary, obtains a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met.

(<u>Id.</u> at ¶ 40) (citing 42 C.F.R. § 410.40(d)(2)).

Medicaid imposes similar medical-necessity and documentation requirements. (<u>Id.</u> at ¶ 42).

**A.    The alleged scheme**

When Sharpe began working for Americare on October 3, 2012, he was sent to a mandatory three-day orientation. (<u>Id.</u>

at ¶ 45). Jay White, the manager in charge of quality assurance, explained that a significant number of Americare's claims were being returned as unpaid, and that it was his job to find ways to "word the reports in such a way that Medicare would pay the claims." (Id.).

Sharpe then attended field training with Joe Prestia. (Id. at ¶ 46). Prestia told Sharpe that regardless of the patient's status, it was important to not let the patient "walk around," and to document that the patient was transferred by soft stretcher and slide sheet, as that would assist in showing that the patient was "bed-confined." (Id.). According to Prestia, it was also acceptable to report that the patient was transferred "by upper extremity lift with two crewmembers assisting." (Id.).

Sharpe cites three examples of what he categorizes as medically-unnecessary ambulance services. (Id. at ¶¶ 48-55). Sharpe transported "M.S." from her home to a dialysis appointment on a weekly basis. (Id. at ¶ 48). Each time, M.S. stood in her driveway waiting for the ambulance or walked to the ambulance parked about 150 or 200 feet away from her home. (Id.).

Sharpe also transported "D.V." from her home to her dialysis appointment. (Id. at ¶ 50). Each time, D.V. walked outside, locked her door, and climbed onto the stretcher in her driveway. When the ambulance arrived at the dialysis

3

center, D.V. climbed off the stretcher and walked a few feet to a chair in the waiting room. On more than one occasion, this occurred in the presence of Chris Barwenko, a supervisor. (Id.).

Sharpe picked up a third patient, "C.B.," from Astoria Health and Rehabilitation Center and transferred him to a dialysis appointment several times a week. (Id. at ¶ 52). Each time, C.B. got out of bed on his own, met Sharpe in the hallway, and climbed onto the stretcher. Once C.B. arrived at the dialysis center, he climbed off the stretcher, walked to the scale and weighed himself, and walked to the dialysis chair for treatment. The first few times that Sharpe transported C.B., Sharpe documented that C.B. was ambulatory. Even C.B. told Sharpe that he did not see why he needed to travel by ambulance. (Id.).

In the first week of November 2012, Sharpe discussed C.B.'s transportation with Americare's Polk County operations manager, Brittany Hanlin. (Id. at ¶ 54). Hanlin told Sharpe that Americare transported C.B. to his dialysis appointment because if they did not, Astoria would be responsible for paying for C.B.'s transport. Hanlin stated that "we all win" because Astoria received the benefit of not having to pay for transportation, and Americare was able to charge a higher rate for ambulance service as opposed to a cheaper option, such as a wheelchair van. (Id.).

Soon after Sharpe's conversation with Hanlin, another supervisor, Elliot Ortiz, told Sharpe not to use the word "ambulate" in his reports. (Id. at ¶ 55). Sharpe responded that to write anything else would be a lie. Ortiz replied that he was not telling Sharpe to lie, he was just telling Sharpe not to use the word "ambulatory." (Id.).

After that conversation, Sharpe tried to comply by reporting that he "assisted the patient to the stretcher," but Sharpe was told that he needed to document that the patient was transferred by slide sheet and soft stretcher. (Id. at ¶ 56). Even when it was not possible to safely transfer a patient by this method, Sharpe was instructed to use the phrase because it resulted in fewer Medicare denials. (Id.).

**B. The alleged retaliation**

Sharpe's first 90 days of employment were complete on January 3, 2013. (Id. at ¶ 57). Sharpe received a written evaluation rating him as "outstanding" in every category. (Id.).

A few days later, Heather Thomas, a supervisor, instructed Sharpe to re-write a report because it was not good enough to get Americare reimbursed. (Id.). Sharpe initially refused, but after Ortiz threatened him with suspension, Sharpe re-wrote the report almost exactly as he had written it

the first time. Sharpe informed Ortiz that he felt Americare was committing Medicare fraud. (Id.).

Soon after the conversation with Ortiz, Prestia told Sharpe that his evaluation had been revised because only supervisors could receive an "outstanding" rating. (Id. at ¶ 58). Sharpe's new evaluation assessed him as "average." (Id. at ¶¶ 58, 78).

On February 23, 2013, Prestia told Sharpe that his reports had been the subject of a meeting among the Americare supervisors. (Id. at ¶ 59). Prestia suggested that Sharpe make his reports look just like Prestia's reports, which, according to Sharpe, contained misspellings and were not complete, but ensured Medicare reimbursement. (Id.). Sharpe told Prestia that he thought he was being harassed because he pointed out Americare's fraudulent activities. (Id. at ¶ 60). After that conversation, Sharpe's reports were constantly returned to him as deficient. (Id. at ¶ 61).

On February 26, 2013, Sharpe reported Americare's alleged Medicaid and Medicare fraud to the Florida Agency for Health Care Administration, which administers the Medicaid program in Florida. (Id. at ¶¶ 35, 65). On March 1, 2013, Ortiz presented Sharpe with a write-up for taking photos on the clock. (Id. at ¶ 66). Sharpe informed Hanlin and Ortiz that the photos were being submitted to the State of Florida in connection with a fraud complaint. (Id.).

Four days later, on March 5, 2013, Americare terminated Sharpe after falsely accusing him of taking company files and sabotaging Americare's computer network.  (Id. at ¶¶ 68, 79).

On May 1, 2013, Sharpe filed the instant action under seal, pursuant to 31 U.S.C. § 3730(b)(2). (Doc. # 1).  Sharpe alleges violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A) and (B) (Counts I and II), violation of the Florida False Claims Act, Fla. Stat. § 68.082(2)(g) (Count III), and retaliation in violation of the False Claims Act, 31 U.S.C. § 3730(h) (Count IV).  (Doc. #1 at ¶¶ 80-97).

On January 5, 2017, the United States filed a notice declining to intervene, but stating that its investigation would continue.  (Doc. # 26).  On January 10, 2017, the Court lifted the seal and directed Sharpe to serve the Complaint on Americare. (Doc. #27).  On May 26, 2017, Americare filed the instant Motion to Dismiss (Doc. # 55), which is now ripe for review.

On June 9, 2017, the State of Florida declined to intervene.  (Doc. # 60).  However, on June 30, 2017, the United States filed a Motion to Intervene, requesting 60 days to file a Complaint in Intervention.  (Doc. # 63 at 2).  The United States suggests that its request will moot the instant Motion to Dismiss, except as it relates to Sharpe's retaliation claim in Count IV.  (Id.).

Because the Motion to Dismiss is ripe for review, the merits are considered below. The Court defers ruling on the United States' Motion to Intervene until Americare either files a response or fails to timely respond.

## II. <u>Legal Standard</u>

On a motion to dismiss, the Court accepts as true all allegations in the complaint and construes the facts in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). A court is not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

Rule 9(b) of the Federal Rules of Civil Procedure imposes more stringent pleading requirements on claims alleging fraud.

<u>Clausen v. Lab. Corp. of Am., Inc.</u>, 290 F.3d 1301, 1305 (11th Cir. 2002). The complaint must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." <u>Hopper v. Solvay Pharm., Inc.</u>, 588 F.3d 1318, 1324 (11th Cir. 2009).

## III. <u>Discussion</u>

### A. Presentment of a false claim (Count I)

In Count I, Sharpe alleges that Americare violated 31 U.S.C. § 3729(a)(1)(A), which creates a right of action against any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." To establish a violation of § 3729(a)(1)(A), Sharpe must prove three elements: "(1) a false or fraudulent claim, (2) which was presented, or caused to be presented, for payment or approval, (3) with the knowledge that the claim was false." <u>United States ex rel. Phalp v. Lincare Holdings, Inc.</u>, 857 F.3d 1148, 1154 (11th Cir. 2017).

#### 1. Sharpe fails to allege "presentment"

In a claim under § 3729(a)(1)(A), the key question is whether the defendant "presented or caused to be presented" a false claim. <u>Urquilla-Diaz v. Kaplan Univ.</u>, 780 F.3d 1039, 1052 (11th Cir. 2015) (quoting <u>Hopper</u>, 588 F.3d at 1325-26).

9

Accordingly, Sharpe "must allege the actual presentment of a claim . . . with particularity, meaning particular facts about the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." Id. at 1052 (internal quotation marks omitted).

"Providing exact billing data — name, date, amount, and services rendered — or attaching a representative sample claim is one way a complaint can establish" presentment of a false claim. U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc., 591 F. App'x 693, 704 (11th Cir. 2014). "However, there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim." Id. (citing Clausen, 290 F.3d at 1312 & n.21). Rather, a complaint must contain "some indicia of reliability" that a false claim was actually submitted. Clausen, 290 F.3d at 1311 (emphasis original). For instance, a relator with first-hand knowledge of the defendant's billing practices may possess a sufficient basis for alleging that the defendant submitted false claims. Mastej, 591 F. App'x at 704.

The Complaint alleges that Americare "submitted false claims to Medicare for payment for ambulance transportation services" for patients M.S., D.V., and C.B. "that did not meet the applicable Medicare guidelines because [the patients'] medical condition at the time was such that other means of transportation were not contraindicated." (Doc. # 1 at ¶¶ 49,

10

51, 53).  In addition, the Complaint alleges that Americare "created or submitted documentation that falsely represented that a patient was either bed-confined or that transportation by ambulance was otherwise medically required," and that "claims submitted to Medicare and Medicaid . . . falsely described the condition of certain dialysis patients on the specific day the patient was transported[.]"[1]  (Id. at ¶ 70).

These allegations fall short of alleging "exact billing data."  Mastej, 591 F. App'x at 704.  Nonetheless, Sharpe insists that the Complaint contains sufficient "indicia of reliability" because Sharpe is a corporate insider, and he personally delivered medically-unnecessary ambulance services and witnessed Americare's efforts to disguise the scheme by re-writing reports.  (Doc. # 61 at 11-13).

The Court agrees that Sharpe's allegations demonstrate first-hand knowledge of Americare's alleged transportation scheme.  But the Complaint fails to connect the underlying scheme to the actual submission of a false claim.  Indeed, the Eleventh Circuit rejected similar allegations in U.S. ex rel. Atkins v. McInteer:

---

[1] The Complaint also alleges that Americare, "on certain occasions" assigned false International Classification of Disease (ICD-9) codes and obtained physician certification statements containing false information, but the Complaint does not allege that the codes or certifications were part of a claim submitted for payment.  (Doc. # 1 at ¶¶ 71-72).

11

In the case at hand, the complaint fails rule 9(b) for want of sufficient indicia of reliability to support the assertion that the defendants submitted false claims. As the plaintiff did in Clausen, Atkins has described in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims. He cites particular patients, dates and corresponding medical records for services that he contends were not eligible for government reimbursement. Just like the Clausen plaintiff, though, Atkins fails to provide the next link in the FCA liability chain: showing that the defendants actually submitted reimbursement claims for the services he describes. Instead, he portrays the scheme and then summarily concludes that the defendants submitted false claims to the government for reimbursement.

470 F.3d 1350, 1358-59 (11th Cir. 2006) (emphasis in original); see also Clausen, 290 F.3d at 1311-12.

Sharpe's authority does not support a contrary result. In Matheny, the Eleventh Circuit held that the relator's allegations possessed the requisite indicia of reliability because the relator "personally participated in the manipulation" of account data submitted to the government, and the relator provided "detailed allegations of the accounting records . . . and his involvement with the patient accounts." U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1221, 1230 (11th Cir. 2012). Likewise, in Walker, a nurse practitioner alleged that she received direct instructions about how to bill services and also had at least one personal conversation about the defendant's billing practices with the defendant's office manager. U.S. ex rel. Walker v. R&F Props. of Lake Cty., Inc., 433 F.3d 1349, 1360

(11th Cir. 2005).[2]  Here, by contrast, the Complaint does not allege that Sharpe possesses any knowledge of the claims process, nor does the Complaint even allege that Sharpe's allegedly false reports were presented as part of a claim to the government.

Of course, one could assume that Americare would not have instructed Sharpe to alter his reports unless Americare was actually submitting false claims for reimbursement.  And similarly, one could assume that Hanlin would not have told Sharpe that "we all win" unless Americare actually received payment.  But to state a claim under § 3729(a)(1)(A), Sharpe must do more than allege that it is "likely" that claims were submitted to the government.  Clausen, 290 F.3d at 1313.  The Court "cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit."  Id.

Based on the foregoing, Count I is due to be dismissed. However, the Court denies Americare's request for dismissal with prejudice.  (Doc. # 55 at 17-18).  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires."  In

_____

[2] Sharpe also references this Court's recent decision in United States v. Premier Hospitalists PL, but in that case, two relators alleged that they possessed detailed first-hand knowledge of the defendants' billing and coding practices. No. 8:14-cv-2952-T-33TBM, 2017 WL 119773, at *5-7 (M.D. Fla. Jan. 12, 2017).

this case, the Sharpe's delay in requesting amendment is due to the government's protracted investigation under 31 U.S.C. § 3730(b)(2)-(3) and Fla. Stat. § 68.083(2)-(3). And it does not appear that amendment would be futile, particularly given that Sharpe has not previously amended the complaint. <u>Cf. Corsello v. Lincare, Inc.</u>, 428 F.3d 1008, 1015 (11th Cir. 2005) (affirming the denial of leave to amend where the relator had already amended twice and unnecessarily delayed his request to amend).

### 2. The Sharpe also fails to allege "falsity"

In addition to challenging the presentment prong, Americare argues that Sharpe fails to allege a "false" claim for two reasons. First, Americare maintains that the question of whether ambulance transport is "medically necessary" is a subjective judgment incapable of being "objectively false." (Doc. # 12 at 13). Second, Americare contends that the issue of medical necessity is irrelevant for any claim for services prior to November 16, 2012, as the regulation then in effect did not require a showing of medical necessity if a physician certified the transport. (<u>Id.</u> at 14-15). Relying on facts not pleaded in the Complaint, Americare assumes the transports at issue were supported by physician certifications. (<u>Id.</u> at 15). Sharpe forcefully disputes these points. (Doc. # 61 at 13-19).

The Court finds that resolution of the parties' arguments is premature because Sharpe fails to allege the element of falsity with particularity. See Matheny, 671 F.3d at 1225 ("a relator must identify the particular document and statement alleged to be false"). Courts typically identify three different types of false claims: (1) "factually false" claims, (2) claims that are "legally false" based on an express certification, and (3) claims that are "legally false" based on an implied certification. Michael Holt & Gregory Klass, Implied Certification Under the False Claims Act, 41 Pub. Cont. L.J. 1, 15-16 (2011). "A factually false claim occurs, for example, when a supplier submits a claim that misidentifies the [services] supplied or requests reimbursement for [services] that it never provided." United States ex rel. Phalp v. Lincare Holdings, Inc., 116 F. Supp. 3d 1326, 1344 (S.D. Fla. 2015), aff'd as modified, 857 F.3d 1148 (11th Cir. 2017). In other words, "the supplier falsely bills the government for something not received." Id.

A claim is legally false, under an express false-certification theory, when the defendant falsely certifies its compliance with an applicable federal statute, federal regulation, or contractual term. United States v. The Boeing Co., 825 F.3d 1138, 1148 (10th Cir. 2016); U.S. ex rel. Hobbs v. MedQuest Assocs., Inc., 711 F.3d 707, 714 (6th Cir. 2013). Conversely, under an implied false-certification theory, a

15

defendant is liable for failing to disclose its non-compliance with a material statutory, regulatory, or contractual provision if: (1) "the claim does not merely request payment, but also makes specific representations about the goods or services provided," and (2) "the defendant's failure to disclose . . . makes those representations misleading half-truths." Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 1999-2001 (2016) (adopting implied false-certification theory under 31 U.S.C. § 3729(a)(1)(A)).

Here, it is not clear under which theory of "falsity" Sharpe is proceeding. Sharpe fails to allege within Count I what specific facts or certifications rendered the claims false and why they were false. Instead, the Complaint relies on bare legal conclusions (Doc. # 1 at ¶¶ 81-82, 84-85, 87-90, 92-97) and improperly incorporates all preceding allegations by reference (Id. at ¶¶ 80, 83, 86, 91), a hallmark of "shotgun" pleading. Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015); Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1381 (11th Cir. 2010).

If Sharpe amends Count I, he must remedy these defects and include the necessary supporting facts, either within the body of Count I or by incorporating specific paragraphs by reference. Americare may re-assert its arguments relating to

16

falsity in a future motion, but Americare shall refrain from relying on facts outside of the pleadings.

**B.    False statement material to a false claim (Count II)**

In Count II, Sharpe alleges a violation of 31 U.S.C. § 3729(a)(1)(B), which creates a cause of action against any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." In contrast to Sharpe's claim in Count I, a claim under § 3729(a)(1)(B) "does not demand proof that the defendant presented or caused to be presented a false claim to the government or that the defendant's false record or statement itself was ever submitted to the government." Hopper, 588 F.3d at 1327. Rather, "[t]o prove a claim under § 3729(a)(1)(B), a relator must show that: (1) the defendant made (or caused to be made) a false statement, (2) the defendant knew it to be false, and (3) the statement was material to a false claim." Phalp, 857 F.3d at 1154.

The Complaint fails to identify what "false record or statement" is at issue and why the statement was "material" to a false claim. Count II is therefore dismissed with leave to amend. Because § 3729(a)(1)(A) and § 3729(a)(1)(B) provide distinct theories of liability, Sharpe must tailor the facts alleged in Counts I and II to support the specific elements of those claims.[3]

---

[3] See United States v. Depuy Orthopaedics, Inc., 159 F.
(continued...)

## C.    Florida False Claims Act (Count III)

In Count III, Sharpe alleges a violation of the Florida False Claims Act ("FFCA").  The caption to Count III cites Fla. Stat. § 68.082(2)(g), the so-called "reverse false claim" provision, which imposes liability when a defendant "avoid[s] the payment of money due to the government, as opposed to submitting to the government a false claim." <u>United States v. Space Coast Med. Assocs., L.L.P.</u>, 94 F. Supp. 3d 1250, 1263 (M.D. Fla. 2015).  Within Count III, however, Sharpe quotes statutory language from two different sections of the FFCA, Fla. Stat. § 68.082(2)(a) and (b). (Doc. # 1 at ¶¶ 88-89). Those sections parallel the violations of the federal False Claims Act pleaded in Counts I and II.

To the extent that Sharpe intends to bring parallel claims under the FFCA, Sharpe does not dispute that these

---

³(...continued)
Supp. 3d 226, 252 (D. Mass. 2016) (distinguishing "pleading standards for direct claims, or sales to the government, which are governed by 31 U.S.C. § 3729(a)(1)(A), from indirect claims to the government where a defendant causes third-parties to submit false claims, which are governed by 31 U.S.C. § 3729(a)(1)(B)"); <u>United States v. Savannah River Nuclear Sols., LLC</u>, No. 1:16-cv-00825-JMC, 2016 WL 7104823, at *22 (D.S.C. Dec. 6, 2016) (explaining that under 31 U.S.C. § 37291(a)(1)(B), "an FCA defendant (such as a subcontractor) may be liable for statements made to a third party (such as a prime contractor) which the prime contractor uses in its claim for payment or approval from the government"); <u>Hopper</u>, 588 F.3d at 1328 (explaining that under the former version of § 37291(a)(1)(B), "[a] defendant's false statements themselves need not be presented to the government, and the defendant need not personally submit a false claim.")

claims are subject to the same pleading standards as Counts I
and II. <u>Klusmeier v. Bell Constructors, Inc.</u>, 469 F. App'x
718, 719 n.1 (11th Cir. 2012); <u>United States v. LifePath
Hospice, Inc.</u>, No. 8:10-cv-1061-T-30TGW, 2016 WL 5239863, at
*8 (M.D. Fla. Sept. 22, 2016).  Accordingly, Sharpe's claim
for violations of Fla. Stat. § 68.082(2)(a) and (b) fails for
the reasons stated above, and Count III is dismissed with
leave to amend.

If Sharpe re-pleads, Sharpe must clarify under which
section or sections of the FFCA he is proceeding.  If Sharpe
alleges a violation of more than one section of the FFCA, he
must plead the violations in separate counts.

**D.  Retaliation (Count IV)**

In Count IV, Sharpe alleges that he was terminated in
retaliation for his protected conduct under the False Claims
Act, in violation of 31 U.S.C. § 3720(h). (Doc. # 1 at ¶¶ 93-
95).  Because the retaliation claim does not require a showing
of fraud, it is not subject to Rule 9(b).  <u>U.S. ex rel.
Sanchez v. Lymphatx, Inc.</u>, 596 F.3d 1300, 1304 (11th Cir.
2010).

The False Claims Act prohibits the termination of an
employee "because of lawful acts done by the employee . . . in
furtherance of an action under this section or other efforts
to stop 1 or more violations of this subchapter." 31 U.S.C.

§ 3760(h)(1). Americare argues that the Complaint fails to allege the requisite protected activity because it does not allege that Sharpe objected to "fraudulent actionable medical practices i.e. actual false bills." (Doc. # 55 at 16).

Americare relies on a district court decision holding that a relator failed to allege protected activity where her reports of misconduct were "compliance related," rather than "specifically concerned with fraudulent billings to the government." Farnsworth v. HCA, Inc., No. 8:15-cv-65-T-24MAP, 2015 WL 3453621, at *7 (M.D. Fla. May 29, 2015). But in this case, Sharpe alleges that he "refused to write reports according to Americare's directives and informed management that Americare was knowingly committing fraud," which resulted in lower performance evaluations. (Doc. # 1 at ¶ 78). Sharpe also alleges that he "informed Americare that he filed a complaint with the government informing the government that Americare was committing Medicare fraud," which resulted in his termination. (Id. at ¶ 79). Those allegations plausibly allege protected activity. See Sanchez, 596 F.3d at 1303-1304 (holding, under previous version of § 3730(h), that relator's allegations were sufficient where she "complained again and again about the unlawful actions of the Defendants" and "told them that they were all incurring significant criminal and civil liability"); see also United States v. Wellcare Health Plans, Inc., No. 8:12-CV-2032-T-30EAJ, 2016 WL 1077359, at *4

(M.D. Fla. Mar. 18, 2016) (observing that the current version of § 3730(h) more broadly defines protected activity).

To the extent Americare suggests that Sharpe must allege an underlying violation of the False Claims Act in order to state a retaliation claim, the Court is not persuaded. "[P]roving a violation of § 3729 is not an element of a § 3730(h) cause of action." <u>Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson</u>, 545 U.S. 409, 416 n.1 (2005); <u>Sanchez</u>, 596 F.3d at 1304 n.6; <u>Hoyte v. Am. Nat'l Red Cross</u>, 518 F.3d 61, 67 (D.C. Cir. 2008). Therefore, Count IV survives.

**IV. <u>Conclusion</u>**

Based on the foregoing, it is **ORDERED, ADJUDGED, and DECREED** that:

(1) Defendant Americare Ambulance's Motion to Dismiss (Doc. # 55) is **GRANTED IN PART**, to the extent that Counts I, II, and III of the Complaint are dismissed without prejudice and with leave to amend consistent with the instructions in this Order. The Motion to Dismiss is **DENIED IN PART** as to Count IV.

(2) Relator Ernest Sharpe may file an Amended Complaint within 30 days of the date of this Order.

(3) The Court defers ruling on the United States' Motion to Intervene (Doc. ## 62, 63), until Americare either responds or fails to file a timely response.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE